UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
R.R.M.C.,                                                    :
                                    Petitioner,              :
                                                             :     22 Civ. 2952 (LGS)
         -against-                                           :
                                                             :     <u>**OPINION AND ORDER**</u>
THOMAS DECKER, et al.,                                       :
                                    Respondents.             :
                                                             :
------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Petitioner R.R.M.C., a citizen and native of Honduras, is detained by U.S. Immigration and Customs Enforcement ("ICE") pending removal proceedings. On April 8, 2022, Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 seeking release on his own recognizance or reasonable conditions unless he received a constitutionally adequate bond hearing. On May 9, 2022, a Stipulation and Order (the "Order") was entered dismissing the petition and requiring the Government to provide Petitioner a bond hearing subject to certain requirements within twenty-one days. On May 24 and 26, 2022, a hearing was held followed by a decision denying his release. Petitioner argues that the May 2022 hearing did not comply with the Order and moves to enforce compliance. For the reasons below, Petitioner's motion is granted in part and denied in part.

**I.     BACKGROUND**

The following facts are taken from the parties' stipulation and from the record of Petitioner's immigration proceedings.

**A.  Petitioner's Immigration Proceedings**

Petitioner was placed in removal proceedings on November 16, 2018, pursuant to a Notice to Appear. Petitioner applied for various forms of immigration relief, including asylum,

withholding of removal and protection under the federal regulations implementing the Convention Against Torture ("CAT"). While those proceedings were pending, Petitioner was detained by ICE on August 3, 2021. An immigration judge ("IJ") later denied Petitioner's application for relief and ordered him removed. Petitioner's appeal from his order of removal is currently pending before the Board of Immigration Appeals ("BIA"). On October 4, 2021, a bond hearing was held at which Petitioner bore the burden of demonstrating that he was not a flight risk or a danger to the community. Following that hearing, an IJ denied Petitioner's request for release. On April 13, 2022, the BIA dismissed Petitioner's appeal from the IJ's bond decision.

### B. Petitioner's Habeas Proceedings and the Order

On April 8, 2022, the instant petition was filed. Petitioner argued, *inter alia*, that his detention violated due process because he had not received a bond hearing at which the Government bore the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or a danger to the community and at which the IJ considers alternatives to detention and Petitioner's ability to pay any monetary bond.

The Order requires Respondents to provide Petitioner with a new bond hearing at which "the government shall bear the burden of establishing, by clear and convincing evidence, that R.R.M.C. poses a danger to the community or presents a flight risk that cannot be mitigated by reasonable conditions of supervision or monetary bond" and at which "[t]he immigration judge must consider alternative conditions of release with respect to both dangerousness and risk of flight." The Order provides that this Court "retain[s] jurisdiction to enforce compliance."

### C. Petitioner's Post-Order Bond Hearing

#### i. The Hearing Evidence

The bond hearing was held on May 26, 2022, after a brief adjournment. The IJ began by reviewing the record which included: (1) the Order; (2) the Government's timely submission, including an Interpol Red Notice[1] and Honduran police documents related to criminal charges pending against Petitioner in Honduras; (3) Petitioner's memorandum of law with several exhibits and (4) supporting documents filed by Petitioner. Petitioner's submission contained evidence in support of his argument that the charges against him in Honduras are political and related to the persecution he fears at the hands of the MS-13 gang if he returns to Honduras. This evidence included an expert report, corroborating Petitioner's allegations that MS-13 is closely connected to the government of Honduras, and a psychological evaluation confirming Petitioner's fear of returning to Honduras. Petitioner submitted letters of support from family and community members. Petitioner's counsel also submitted legal argument in favor of alternatives to detention, including in-person or remote telephone or app-based check-ins with ICE, or "GPS tracking via ankle monitor."

At the hearing, Petitioner called no live witnesses, and the parties stipulated that Petitioner's expert would testify consistent with his report if called. The Government called Petitioner and questioned him about his fear of returning to Honduras and the political nature of the charges in Honduras.

---

[1] "A Red Notice is a request to law enforcement worldwide to locate and provisionally arrest a person pending extradition, surrender, or similar legal action." Interpol, *Red Notices*, https://www.interpol.int/How-we-work/Notices/Red-Notices. "Red Notices are issued for fugitives wanted either for prosecution or to serve a sentence." *Id.*

### ii. The Parties' Arguments

At the close of Petitioner's testimony, the IJ took the Government's closing argument first because "it is [the Government's] burden." The Government argued that Petitioner posed a danger to the community because he was accused of attempted murder in Honduras. The Government did not address Petitioner's flight risk.

Petitioner's counsel addressed both relevant issues, danger to the community and flight risk. On danger to the community, Petitioner's counsel responded that the Government had not met its burden because the accusations in Honduras are unproven. On flight risk, Petitioner's counsel argued that Petitioner had made every required check-in with ICE in the nearly four years his immigration proceedings had been pending, his family had attended all court appearances, and he was highly engaged in the community and had significant support. Petitioner's counsel also argued that the Government had not met its burden to establish, by clear and convincing evidence, that alternatives to detention could not mitigate any danger or flight risk.

On rebuttal, the Government argued that Petitioner's prior ICE check-ins were no longer probative because they occurred before Petitioner became aware of the Red Notice. The Government also continued to rely on the fact that (1) Petitioner's applications for U.S. immigration relief had been denied and were on appeal and (2) Petitioner was charged with having committed a crime in Honduras shortly before coming to the United States. On that basis, the Government asserted that it had proved that Petitioner is "an unmitigated flight risk which no amount of bond or alternatives to detention would ameliorate."

### iii. The IJ's Written Decision

On June 8, 2022, the IJ issued his written decision (the "Decision") denying Petitioner a change of custody status. The Decision acknowledges that the Government "carries the burden of proving, by clear and convincing evidence, that the [Petitioner] 'poses a danger to the community or presents a flight risk that cannot be mitigated by reasonable conditions of supervision or monetary bond.'" Much of the Decision addresses whether the evidence of criminal charges in Honduras establishes dangerousness by clear and convincing evidence, and the IJ concluded that it does not.

On flight risk, the IJ found that the Government had carried its burden based on (1) the likelihood that Petitioner would be arrested if returned to Honduras, whether the charges are political or not; (2) the fact that Petitioner's relief application had been denied and was unlikely to succeed on appeal; (3) Petitioner's expressed fear of returning to Honduras due to gang violence; and (4) his desire to stay with his partner and children in the United States. The IJ acknowledged Petitioner's willingness to "accept any condition of release," his plans to work with an organization on a post-release plan and his history of appearing for immigration court. The IJ discounted the latter because Petitioner's prior compliance predated his awareness of the Red Notice. Ultimately, the IJ found a risk of flight, stating that he was "not convinced that [Petitioner] would report to the appropriate authorities for his approved deportation should he be released . . . . Nor [was he] convinced that reasonable conditions of release could prevent this impulse" to flee.

### D. Petitioner's Motion to Enforce Compliance with the Order

On July 18, 2022, Petitioner filed this motion claiming that the Government had failed to comply with the Order by applying the incorrect legal standard at his May 26, 2022, bond

hearing.  Specifically, Petitioner argues that the IJ improperly shifted the burden and failed to consider alternatives to detention, and that the Government's evidence cannot, as a matter of law, establish by clear and convincing evidence that Petitioner is a flight risk that cannot be mitigated. He seeks relief in the form of "prompt release on recognizance or on reasonable conditions," or in the alternative, for the Court to hold a bond hearing itself.

## II.     STANDARD

"As a general rule, once a federal court has entered judgment, it has ancillary jurisdiction over subsequent proceedings necessary to vindicate its authority, and effectuate its decrees . . . [including] to enforce the judgment." *Dulce v. Dulce*, 233 F.3d 143, 146 (2d Cir. 2000); *accord Sophia v. Decker*, No. 19 Civ. 9599, 2020 WL 1957373, at *2 (S.D.N.Y. Mar. 3 2020).  "However, a court's power to enforce its judgment 'only extends to the subject matter covered by the judgment.'" *Matter of the Application of Whitehaven S.F., LLC v. Spangler*, 13 Civ. 8476, 2016 WL 1271499, at *1 (S.D.N.Y. Mar. 29, 2016); *see also Harvey v. Johanns*, 494 F.3d 237, 244 (1st Cir. 2007).  "In reviewing [Petitioner's] motion to enforce, it is important to emphasize that the Court's task is narrow: it is to determine whether Respondent[] complied with the . . . Order, not to review the hearing evidence de novo." *Medley v. Decker*, 18 Civ. 7361, 2020 WL 1033344, at *2 (S.D.N.Y. Mar. 3, 2020) (cleaned up).  The court must remain "mindful of its obligation to afford a degree of deference to the factfinder's determinations" so as "not to overstep its bounds and set aside an immigration judge's bond determination on discretionary or evidentiary grounds." *Id.* (cleaned up).

### III. DISCUSSION

#### A. Jurisdiction

The Court has jurisdiction to review the questions of law raised by Petitioner's motion. Petitioner is detained pursuant to 8 U.S.C. § 1226(a). Section 1226(e) provides:

> The Attorney General's discretionary judgment regarding the application of [§ 1226] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

"A decision is discretionary and therefore beyond this Court's jurisdiction to review, when it pertains to the correctness of an IJ's fact-finding or the wisdom of his exercise of discretion." *Zabaleta v. Decker*, 331 F. Supp. 3d 67, 72 (S.D.N.Y. 2018) (internal quotation marks omitted). The parties agree that the Court lacks jurisdiction to review the IJ's weighing of the evidence. *See, e.g.*, *Sophia*, 2020 WL 1957373, at *3; *Reyes v. King*, No. 19 Civ. 8674, 2021 WL 3727614, at *5 (S.D.N.Y. Aug. 20, 2021). But Section 1226(e) does not "limit habeas jurisdiction over constitutional claims or questions of law." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (internal quotation marks omitted).

Whether Petitioner received the process he was due under the Order "is not a matter of discretion and is subject to judicial review." *Id.* (internal quotation marks omitted). For example, whether the IJ "fail[ed] to apply the correct legal standard and to hold the government to its burden of proof" is a question of law that this Court may review. *Argueta Anariba v. Shanahan*, No. 16 Civ. 1928, 2017 WL 3172765, at *4 (S.D.N.Y. July 26, 2017); *see Liu v. I.N.S.*, 508 F.3d 716, 721 (2d Cir. 2007) ("[A] petitioner could raise a reviewable 'question of law' by arguing that the IJ used the wrong legal standard in coming to his determination."). "In assessing whether a petitioner raises a question of law or a constitutional challenge, a petitioner's arguments are assessed regardless of the rhetoric employed in the petition. An assertion that an

7

IJ misread, misunderstood, or misapplied the law in weighing factors relevant to the grant or denial of discretionary relief does not convert what is essentially an argument that the IJ abused their discretion into a legal question." *Lantigua v. Decker*, No. 17 Civ. 4880, 2017 WL 5054567, at *2 (S.D.N.Y. Oct. 27, 2017) (cleaned up).  Petitioner's arguments are addressed below only to the extent they raise genuine questions of law and otherwise are disregarded as beyond this Court's jurisdiction.

### B. Merits

At Petitioner's renewed bond hearing, the IJ did not properly allocate the burden of proof to the Government on two issues: whether Petitioner presents a flight risk and whether that risk can be mitigated by reasonable alternatives to detention.  Although the IJ stated repeatedly that the Government bore the burden of proof, the IJ's recitation of the correct legal standard is not dispositive.  *See Hechavarria v. Whitaker*, 358 F. Supp. 3d 227, 241 (W.D.N.Y. 2019) ("[T]he mere utterance of the correct standard of proof early in the IJ's decision is insufficient to demonstrate that it was applied when the rest of that decision demonstrates otherwise.") (citing *Enoh v. Sessions*, No. 16 Civ. 85, 2017 WL 2080278, at *8 (W.D.N.Y. May 15, 2017)).  The balance of the Decision indicates that the IJ did not hold the government to its burden and instead "placed on [Petitioner] the burden of proof," which presents a reviewable due process claim.  *Reyes*, 2021 WL 3727614, at *6.

The record shows that the IJ incorrectly applied a "presumption of flight risk" that Petitioner was required to rebut.  The IJ stated:

> Under different circumstances, [Petitioner's] family ties might rebut the presumption of flight risk.  Here, however, it further undermines the likelihood of the Respondent presenting himself to immigration authorities where doing so for the purposes of his final order of removal would invariably mean separation from his family.

The Government argues that this statement does not mean that an impermissible presumption was applied against Petitioner, because this statement came later in the Decision after the IJ's finding that Petitioner presented a flight risk. That argument is unpersuasive. The reference to a presumption appears in a section labeled "Flight Risk." The section begins with the IJ's conclusion that Petitioner presents a high risk of flight followed in the same paragraph by the circumstances supporting that conclusion. The next paragraph, in which the presumption reference appears, addresses Petitioner's arguments and why they are unpersuasive. That paragraph expressly states that the IJ, in weighing the evidence of Petitioner's family ties, considered a presumption of flight risk.

Other statements by the IJ bolster the conclusion that he misallocated the burden of proof. The IJ stated that he was "not convinced that the Respondent would report to the appropriate authorities" and not "convinced that reasonable conditions of release could prevent this impulse." When the Government bears the burden of proof by clear and convincing evidence, the IJ must be convinced in the opposite direction: i.e., convinced that Petitioner *would not* report to authorities and convinced that reasonable conditions of release *could not* mitigate that risk.

The Government argues that fear of removal, likelihood of removal and ties to the United States are all factors that an IJ may consider. *See, e.g.*, *Roman v. Decker*, No. 20 Civ. 6752, 2021 WL 3173138, at *4 (S.D.N.Y. July 27, 2021) (approving of IJ's reliance on petitioner's "ties to the U.S. as a factor militating in favor of finding him a flight risk" because "[t]o take issue with the IJ's reliance on these factors would amount to impermissibly reweighing the IJ's view of the evidence"); *Lawrence v. Reno*, No. 00 Civ. 4559, 2001 WL 80078, at *1 (S.D.N.Y. Jan. 30, 2001) (considering "petitioner's expressed fears of returning to Jamaica" among "other factors" in finding petitioner a flight risk); *cf. Apollinaire v. Barr*, No. 19 Civ. 6285, 2019 WL

9

4023560, at *3 (W.D.N.Y. Aug. 27, 2019) (considering entry of a final removal order against petitioner in weighing flight risk).  Even assuming the Government is correct on each score, the Court is not reweighing the evidence that the IJ considered.  Petitioner's argument that "the IJ used the wrong legal standard" is distinct from a claim that the "IJ *articulated* the correct standard, [but] he erroneously *applied*" that standard.  *Liu*, 508 F.3d at 721.  By erroneously invoking a "presumption of flight risk," the IJ here articulated and applied an incorrect standard.  It is unnecessary to ask whether the IJ "relied upon proof that *could not possibly establish* by clear and convincing evidence -- as a matter of law" the elements of the Government's proof.  *Medley*, 2020 WL 1033344, at *2.  Even if the factors the IJ relied on *could* constitute "clear and convincing evidence," an IJ must make that determination in a bond hearing in which the burden of proof is properly allocated.

The IJ also failed meaningfully to consider alternatives to detention.  The Decision addresses alternatives to detention in conclusory terms, stating that Petitioner's "flight risk . . . cannot be mitigated by reasonable conditions" and that the IJ was not "convinced that reasonable conditions of release could prevent this impulse [to flee]."  The Decision acknowledges Petitioner's willingness to "accept any condition of release" and references a letter of support from Envision Freedom Fund, "an organization that plans to work with [him] on a post release plan."  But the Decision does not mention any specific alternatives or explain why any are insufficient.  *See Hechavarria*, 358 F. Supp. 3d at 242 ("The IJ never explained why the government's evidence made it highly probable that neither 'electronic monitoring,' nor 'stringent monitoring,' nor 'stringent conditions of supervision' would effectively serve the government's interest.").  Nothing in the record reflects that the IJ meaningfully considered any of the alternatives Petitioner offered.  *Compare, e.g.*, *Fernandez Aguirre v. Barr*, No. 19 Civ.

7048, 2019 WL 4511933, at *5 (S.D.N.Y. Sept. 18, 2019) ("The bond hearing transcript is utterly void of any discussion of whether non-incarceratory measures, such as home detention, electronic monitoring, and so forth, could mitigate any danger that Petitioner posed to the safety of the community."), *with Sophia*, 2020 WL 1957373, at *2 (denying enforcement of a conditional writ of habeas corpus where the IJ specifically considered "ankle monitoring and other alternatives to detention" as well as "check-ins" and concluded "this case does not present those circumstances for which such alternatives to detention would be appropriate" (cleaned up)). The foregoing legal errors resulted in failure to comply with the Order. Petitioner's motion to enforce is granted.

### C. Remedy

The matter is remanded to the IJ for a new bond hearing to determine the appropriate alternatives to detention, or that no alternatives to detention are appropriate. *See Blandon v. Barr*, 434 F. Supp. 3d 30, 42 (W.D.N.Y. 2020) (remanding for a new hearing before the IJ and distinguishing cases in which "the orders stated that if a bond hearing that complied with the Order was not held within 14 days, then Petitioner would be released"); *cf. Grasso v. Norton*, 520 F.2d 27, 38 (2d Cir. 1975) ("The conditional writ stated clearly what the consequences would be if the Board of Parole failed to comply . . . ."). It would be inappropriate for the Court to hold the bond hearing itself instead of remanding to the IJ; the Order provides for a hearing before an IJ, and the Court has no reason to believe that an IJ will not be able to provide a hearing that complies with the Order. Petitioner's arguments that he or his family will suffer irreparable harm are troubling, and the Court has considered those in expediting review of Petitioner's motion, but those arguments are ultimately not relevant to the merits of his request for relief.

In order to effectuate the Order and ensure compliance, the Government will be required to release Petitioner unless (1) a bond hearing that complies with the Order is held within fourteen days, and (2) at that hearing, the IJ makes specific, on-the-record findings, based on clear and convincing evidence, that Petitioner presents a flight risk that cannot be mitigated by reasonable conditions of supervision or monetary bond, considering the reasonably available alternatives to detention that Petitioner might proffer at that hearing.

### IV. CONCLUSION

For the foregoing reasons, Petitioner's motion to enforce the judgment is GRANTED in part and DENIED in part. Petitioner's requests for immediate release and for this Court to hold a bond hearing are DENIED. Respondents are directed to hold another bond hearing by **October 14, 2022** that complies with this order for the purposes of determining what, if any, alternatives to detention would most effectively mitigate any flight risk posed by Petitioner without being unduly restrictive. Respondents are then directed to release Petitioner by **October 28, 2022** unless the immigration judge makes specific, on-the-record findings, based on clear and convincing evidence, that Petitioner presents a flight risk that cannot be mitigated by reasonable conditions of supervision or monetary bond, considering the reasonably available alternatives to detention that Petitioner might proffer at that hearing on the record. By **November 4, 2022** Respondents shall file a letter with the Court reporting on the hearing and its outcome.

Petitioner's motion for oral argument is DENIED as moot, and Petitioner's motion to expedite consideration of his motion is GRANTED.

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 13, 21 and 23.

Dated: September 30, 2022
       New York, New York

                                                **LORNA G. SCHOFIELD**
                                      **UNITED STATES DISTRICT JUDGE**